**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION**

| | | |
|---|---|---|
| SHANNON MARIE TRUXEL, | ) | |
| | ) | |
| Plaintiff(s), | ) | |
| | ) | |
| vs. | ) | Case No. 1:23-CV-147 SRW |
| | ) | |
| MARTIN J. O'MALLEY, | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant(s). | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on review of an adverse ruling by the Social Security Administration. The Court has jurisdiction over the subject matter of this action under 42 U.S.C. § 405(g). The parties consented to the exercise of authority by the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Plaintiff filed a Brief in support of the Complaint. ECF No. 16. Defendant filed a Brief in Support of the Answer. ECF No. 17. The Court has reviewed the parties' briefs and the entire administrative record, including the transcripts and medical evidence. Based on the following, the Court will affirm the Commissioner's decision.

I.     **Factual and Procedural Background**

On June 14, 2021, Plaintiff Shannon Marie Truxel protectively filed an application for disability insurance benefits under Title II, 42 U.S.C. §§ 401, *et seq.* with an alleged onset date of April 24, 2021. Tr. 11, 186-87. Plaintiff's application was denied on initial consideration and reconsideration. Tr. 89-120, 122-26. On April 6, 2022, she requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 132-33.

Plaintiff appeared for a telephonic hearing, with the assistance of counsel, on August 2, 2022. Tr. 55-88. Plaintiff testified concerning her disability, daily activities, functional limitations, and past work. *Id*. The ALJ also received testimony from vocational expert ("VE") Darrell Taylor. *Id*. at 85-87. On August 30, 2022, the ALJ issued an unfavorable decision finding Plaintiff not disabled. Tr. 11-24. Plaintiff filed a request for review of the ALJ's decision with the Appeals Council. Tr. 180-82. On June 30, 2023, the Appeals Council denied Plaintiff's request for review. Tr. 1-7. Accordingly, the ALJ's decision stands as the Commissioner's final decision.

With regard to Plaintiff's testimony, medical records, and work history, the Court accepts the facts as presented in the parties' respective statements of facts and responses. The Court will discuss specific facts relevant to the parties' arguments as needed in the discussion below.

## II.     Legal Standard

A disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A claimant has a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" § 1382c(a)(3)(B).

The Commissioner follows a five-step sequential process when evaluating whether the claimant has a disability. 20 C.F.R. § 416.920(a)(1). First, the Commissioner considers the

2

claimant's work activity. If the claimant is engaged in substantial gainful activity, the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a severe impairment "which significantly limits claimant's physical or mental ability to do basic work activities." *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010); *see also* 20 C.F.R. § 416.920(a)(4)(ii). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also* 20 C.F.R. §§ 416.920(c), 416.920a(d).

Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), (d).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses whether the claimant retains the "residual functional capacity" ("RFC") to perform his or her past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(5)(i). An RFC is "defined as the most a claimant can still do despite his or her physical or mental limitations." *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011); *see also* 20 C.F.R. § 416.945(a)(1). While an RFC must be based "on all relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations," an RFC is nonetheless an "administrative assessment"—not a medical assessment—and therefore "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC." *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016).

3

Thus, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). Ultimately, the claimant is responsible for *providing* evidence relating to her RFC, and the Commissioner is responsible for *developing* the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). If, upon the findings of the ALJ, it is determined the claimant retains the RFC to perform past relevant work, he or she is not disabled. 20 C.F.R. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC does not allow the claimant to perform past relevant work, the burden of production to show the claimant maintains the RFC to perform work which exists in significant numbers in the national economy shifts to the Commissioner. *See Brock v. Astrue*, 574 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work which exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled. 20 C.F.R. § 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, the Commissioner finds the claimant disabled. *Id.* At Step Five, even though the *burden of production* shifts to the Commissioner, the *burden of persuasion* to prove disability remains on the claimant. *Hensley*, 829 F.3d at 932.

If substantial evidence on the record as a whole supports the Commissioner's decision, the Court must affirm the decision. 42 U.S.C. §§ 405(g); 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id*. Under this test, the court "consider[s] all evidence in the record, whether it supports or detracts from the ALJ's decision." *Reece v. Colvin*, 834 F.3d 904, 908 (8th

4

Cir. 2016). The court "do[es] not reweigh the evidence presented to the ALJ" and will "defer to

the ALJ's determinations regarding the credibility of testimony, as long as those determinations

are supported by good reasons and substantial evidence." *Id*. The ALJ will not be "reverse[d]

merely because substantial evidence also exists in the record that would have supported a

contrary outcome, or because [the court] would have decided the case differently." *KKC ex rel.

Stoner v. Colvin*, 818 F.3d 364, 370 (8th Cir. 2016).

## III.     The ALJ's Decision

Applying the foregoing five-step analysis, the ALJ found Plaintiff meets the insured

status requirements of the Social Security Act through December 31, 2026. Tr. 18. Plaintiff has

not engaged in substantial gainful activity since April 24, 2021, the alleged onset date. *Id*.

Plaintiff has the severe impairments of "spontaneous coronary artery dissection, history of ST

elevation myocardial infarction (STEMI), right shoulder labral tear, degenerative changes to the

cervical and lumbar spine, depressive disorder, anxiety disorder, and post-traumatic stress

disorder (PTSD)." Tr. 13. Plaintiff does not have an impairment or combination of impairments

that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404,

Subpart P, Appendix 1. Tr. 14-16. The ALJ found Plaintiff had the following RFC through the

date last insured:

> [Plaintiff] has the residual functional capacity to perform light work as defined in
> 20 CFR 404.1567(b) except she can frequently climb ramps and stairs, and
> occasionally climb ladders, ropes and scaffolds. The [Plaintiff] can frequently
> reach overhead using the right upper extremity. She can perform only simple,
> routine and repetitive tasks, requiring only simple work-related decisions with
> few changes in the routine work setting, and no more than occasional contact with
> co-workers and supervisors. She can have no contact with the general public.

Tr. 16.

Plaintiff worked as a private investigator until the alleged onset date. However, the ALJ determined that Plaintiff's residual functional capacity allows her to perform a significant number of jobs regardless of her past relevant work and any applicable transferable skills. Therefore, the ALJ found Plaintiff has "no past relevant work." Tr. 22. The ALJ further found Plaintiff was born on May 14, 1980, and was 40 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. *Id.* Plaintiff has at least a high school education. *Id.*

Relying on the testimony of the VE and considering Plaintiff's age, education, work experience, and RFC, the ALJ found there were jobs existing in significant numbers in the national economy which the Plaintiff could perform, including Cleaner (*Dictionary of Occupational Titles* ("*DOT*") No. 323.687-014, with approximately 440,000 positions nationally); Hand Packer (*DOT* No. 920.687-018, with 317,000 positions nationally); and Production Worker (*DOT* No. 222.687-014 with 197,000 positions nationally). Tr. 22-23.

The ALJ concluded Plaintiff has not been under a disability, as defined in the Social Security Act, from April 24, 2021 through the date of his decision, issued on August 30, 2022. Tr. 23.

## IV.  Discussion

Plaintiff presents two assignments of error: (1) the ALJ failed to consider the combined effects of her impairments; and (2) the ALJ did not sufficiently develop her RFC.

### A. Combined Effects of Plaintiff's Impairments

Plaintiff raises three specific issues under the first assignment of error. The Court will address each argument separately.

### *1. Migraine Headaches*

First, Plaintiff asserts, "The ALJ considered migraine headaches to be minor in spite of the fact that they were reported to healthcare providers on numerous occasions and she was diagnosed with the condition." ECF No. 16 at 13. Plaintiff does not provide any additional discussion or reference to the medical record to support why the ALJ should have found her migraine headaches to be a severe impairment.

The ALJ determined Plaintiff's migraines were a non-severe impairment because the medical evidence and other evidence of record shows that this condition has "either been successfully treated, controlled, stabilized, or otherwise [does] not more than minimally affect, either exertionally or non-exertionally, the claimant's ability to perform basic work activities." Tr. 14.

The underlying medical record does show a history of migraines and headaches. *See* Tr. 314, 328, 341, 355, 524, 812, 889, 951, 1050, 1064, 1083, 1090, 1093, 1004, 1110, 1132, 1144, 1147. In early 2021, prior to her alleged onset date of April 24, 2021, Plaintiff reported experiencing daily headaches. Tr. 359, 371, 374, 387, 406. However, by June 21, 2021, Plaintiff "reported indications of minimal headaches." Tr. 830. Shortly thereafter, on June 23, 2021, June 28, 2021, and June 30, 2021, she denied headaches. Tr. 830-31. On July 7, 2021, Plaintiff reported "very mild headaches." Tr. 832. On November 16, 2021, Plaintiff indicated "she hasn't had headaches since she was in the hospital for her SCADS heart event," Tr. 1078, which was on April 25, 2021. Tr. 632-33. Medical notes from April 18, 2022, noted that she took 500mg of Tylenol two times per day for migraines. Tr. 1132. On May 18, 2022, she reported no headaches during an appointment at Regional Brain and Spine. Tr. 1115.

At Step Two, the ALJ must determine whether the claimant has "a severe medically determinable physical or mental impairment," or "a combination of impairments that is severe," that lasted or is expected to last for at least twelve months. *See* 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii), 416.909; 416.920(a)(4)(ii). The existence of a medically determinable impairment *cannot* be established merely by a claimant's "statement of symptoms, a diagnosis, or a medical opinion," and must instead be "established by objective medical evidence." 20 C.F.R. §§ 404.1521, 416.921. "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). Basic work activities are "the abilities and aptitudes necessary to do most jobs," including, among other things, understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1522(b), 416.922(b).

The Court finds that Plaintiff's argument is not supported by the Social Security Regulations because simply reporting a condition to one's treating providers and having a diagnosis for such a condition does not require an ALJ to find the diagnosed condition severe or disabling. *Dodson v. Kijakazi*, 2021 WL 4125038, at *8 (E.D. Mo. Sept. 9, 2021) ("a mere diagnosis does not presumptively indicate that a claimant has disabling limitations"). The ALJ reasoned in his determination that Plaintiff's migraine headache symptoms were sufficiently managed and longitudinal records showed that her migraines did not cause any ongoing functional limitations. As discussed above, Plaintiff described her symptoms during the relevant period to be mild or non-existent and treated with Tylenol two times per day. No aggressive treatment was recommended or anticipated by her treating providers.

8

Plaintiff does not point to any medical records or case law to support an error by the ALJ. Notably, in Plaintiff's Statement of Undisputed Facts, ECF No. 20, and her summary of the medical evidence, ECF No. 16 at 2-11, there is no discussion of migraines or headaches. Plaintiff points to no evidence to show that her headaches severely limited her ability to work, especially in light of the record demonstrating that her symptoms were mild and treated with Tylenol.

Therefore, the Court finds the ALJ did not err in determining Plaintiff's migraines to be a non-severe impairment. *See Holbert v. Colvin*, 2014 WL 3729640, at *4 (W.D. Mo. July 28, 2014) (affirming the ALJ's finding that claimant's diabetes was a non-severe impairment where claimant only provided evidence of her diagnosis and prescriptions which controlled her diabetes but no evidence showing that the diabetes imposed any functional limitations).

### 2. Empty Sella Syndrome

Next, Plaintiff argues, "The ALJ did not even consider the impairment of empty Sella Syndrome even though diagnosed by treating physicians. This condition could be the cause of migraines, headaches and depression." ECF No. 16 at 13.

On August 20, 2021, Plaintiff underwent a computed tomography (CT) of the head, which revealed a "partially empty sella." Tr. 975. On December 7, 2021, she was formally diagnosed with "empty sella syndrome." Tr. 1061. A neurology record from January 20, 2022, referenced the CT scan "which showed empty sella but no other abnormalities." Tr. 1090. There is no other reference to this condition in the record, and there is no evidence that she was treated for or had physical symptoms or limitations related to empty sella syndrome. Although Plaintiff suggests this condition could be the cause of her migraines, headaches and depression, nothing in the record alludes to that possibility, and Plaintiff fails to cite to any medical records in support.

As discussed above, a diagnosis alone does not equate to disability, nor does it establish functional limitations. *See Collins ex rel. Williams v. Barnhart*, 335 F.3d 726, 730-31 (8th Cir. 2003) (a diagnosis alone "has minor significance one way or the other"; the dispositive question is whether claimant's functioning in various areas was markedly impaired, not what one doctor or another labels his disorder). The record lacks evidence she was treated for the syndrome or that it limited her functional capabilities in any significant way. *See Whitman v. Coleman*, 762 F.3d 701, 706 (8th Cir. 2014) (noting a lack of treatment may indicate a problem is not serious).

The ALJ evaluated Plaintiff's claims of migraines, headaches and depression, which Plaintiff alleges could have been caused by empty sella syndrome. Therefore, even if the ALJ committed error by failing to specifically consider Plaintiff's diagnosis of partial empty sella syndrome at Step Two, the Court cannot agree that remand is appropriate. "The Eighth Circuit's harmless error analysis hinges on whether the ALJ would have decided the case differently had the error not occurred." *Rouse v. Berryhill*, 2019 WL 1359384, at *6 (E.D. Mo. Mar. 26, 2019) (citing *Byes v. Astrue*, 687 F.3d 913, 917 (8th Cir. 2012); *Van Vickle v. Astrue*, 539 F.3d 825, 830 (8th Cir. 2008)). In the present case, including the syndrome in Step Two would not have changed the outcome because nothing in the record evidences that Plaintiff's diagnosis affected her in any way which the ALJ did not otherwise consider or that she required treatment for the condition.

### 3. Mental Impairments

Plaintiff's final argument as to the first assignment of error is somewhat difficult to decipher. Plaintiff writes in its entirety:

> The Plaintiff has been diagnosed with PTSD, anxiety disorder and depression disorder. The ALJ properly classified each diagnosis as "severe impairment". The ALJ determined that Ms. Truxel had no limitation in the area of understanding, remembering or applying information. She has a "mild limitation in --------- with

> others due to PTSD, and anxiety attacks. The plaintiff has a moderate limitation in
> the area of concentration, persistent to maintaining pace. She has mild limitation in
> the area of "managing oneself" (  )
>
> Assuming the ALJ's determination that Ms. Truxel had one marked, two moderate
> and one mile limitation in the area of mental impairment, the limitations, when
> combined with her physical limitation would result in impairments that eliminate
> the possibility of her obtaining or maintaining any employment.

ECF No. 16 at 13-14 (errors in original).

This argument is difficult to interpret because, first, Plaintiff appears to incorrectly summarize the ALJ's determination as to the limitations assigned to her mental impairments. The ALJ determined Plaintiff had *no* limitation in understanding, remembering, or applying information; *marked* limitation in interacting with others; *moderate* limitation with regard to concentrating, persisting, or maintaining pace; and *mild* limitation in adapting or managing herself. *See* ECF No. 15. Plaintiff suggests that the ALJ found "one marked, two moderate and one mile [sic] limitation." However, Plaintiff does not support this argument with citations to the record or explain with any specificity why the ALJ's determinations were incorrect.

The Court finds no error in the ALJ's findings as to Plaintiff's mental impairments. The ALJ clearly explains he based his conclusions upon the medical record and opinions of Robert Cottone, Ph.D. and Kim Stalker, Psy.D., who both found Plaintiff to have the same limitations as outlined by the ALJ's determination. Tr. 15, 21. *See* 92-93, 107-09. The ALJ found their assessments to be persuasive because they were supported by the medical record, the hearing testimony, and evidence of improvement in Plaintiff's mood with medication and counseling. *Id.* Notably, Plaintiff does not disagree with the ALJ's analysis of the persuasiveness of either Dr. Cottone or Dr. Stalker's opinions.

Because Plaintiff offers no argument to support a reversal based on the limitations the ALJ assigned to Plaintiff's mental abilities and does not dispute the persuasiveness of the

medical opinions which support the ALJ's determination, the Court will decline to construct an argument for her. *See, e.g., McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.") (citations omitted). "Without the requisite specificity and analysis supported by the record, Plaintiff has not met [her] burden to show prejudicial error." *Hopper v. Berryhill*, 2017 WL 4236974, at *15 (E.D. Mo. Sept. 25, 2017).

Rather, the Court finds that the record contains substantial evidence to support the ALJ's analysis of Plaintiff's mental limitations. As the ALJ noted, she was able to appropriately answer questions and remember information during her hearing. Tr. 64-85. In her own Function Report, she stated she could maintain her own hygiene, except for limitations with right arm mobility, and felt as if she could adjust to routine changes. Tr. 15, 210, 215.

During her consultative examination, Plaintiff was described to have adequate long-term memory; alert concentration despite some confusion about details; an ability to follow 3-step requests; acceptable reality testing; good hypothetical reasoning; and a diversity of understanding. Tr. 15, 1066. Although she suffers from anxiety and would sometimes exhibit tearfulness at medical appointments, she did not appear to have any inpatient hospitalizations related to her mental health, and she reported that her mood was well controlled with Effexor and took Xanax as needed for anxiety. Tr. 15, 21, 1144. Records reflect that her stress and anxiety was described as "situational," resulting from the shock of a cardiac diagnosis and loss of her job. Tr. 19, 500, 528, 609-11, 682, 786-88.

Notably, Plaintiff has been able to maintain her role as an elected City Council representative, which requires her to attend bi-monthly meetings in person or by video, and to engage with the general public and other council members to some extent. Tr. 17, 68-69, 81, 802, 1071-73, 1135. Additionally, the record shows Plaintiff's ability to travel, drive out-of-state, care for dogs, make videos, and work on ballot initiatives as a member of City Council. Tr. 19-21, 68, 803, 805, 846, 879, 1070-73, 1079, 1121, 1123-25, 1140, 1147, 1149-50. If Plaintiff had more severe mental limitations as she suggests, it would seem questionable that she could maintain an elected role within local government.

Therefore, the Court finds that the ALJ did not err in analyzing Plaintiff's mental impairments as substantial evidence supports the determination. The ALJ properly considered the functional limitations resulting from all of the claimant's medically determinable impairments, both severe and non-severe impairments, in determining Plaintiff's ability to perform basic work activities as well as her residual functional capacity. These determinations by the ALJ are also supported by substantial evidence on the record as a whole.

## B. Residual Functional Capacity

As to the second assignment of error, Plaintiff argues the ALJ did not properly formulate her RFC and should have included additional limitations. Plaintiff's substantive argument is set forth in the following paragraph:

> The physical abilities assigned to the RFC were much too liberal given Ms. Truxel's numerous physical severe impairments. Moreover, it is unrealistic for an individual experiencing PTSD and anxiety disorder not to be off task a minimum of 20% of the workday. It is reasonable for her to be absent at [least] three days a month. All of her limitations were supported by medical records and her sworn testimony. Yet the ALJ relied on the first hypothetical. Given her mental and physical impairments, Ms. Truxel is unable to perform any employment. Substantial evidence exists that she cannot perform even sedentary labor.

ECF No. 16 at 16. Once again, Plaintiff did not cite to any specific medical evidence to support the above argument. She does not explain which "physical severe impairments" required greater limitations, and does not point to any records to support her assertion that she would be off task for a minimum of 20% of the work day or excessively absent from work.

A claimant's RFC is "the most a claimant can do despite [the claimant's] limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)). "The ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record, 'including the medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) (quoting *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). "It is the claimant's burden, and not the Social Security Commissioner's burden, to prove the claimant's RFC." *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001). "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017) (quoting *Steed v. Astrue*, 524 F.3d 872, 875 (8th Cir. 2008)). However, "[e]ven though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner." *Cox v. Astrue*, 495 F.3d 614, 619-20 (8th Cir. 2007).

Here, the ALJ found Plaintiff retained the RFC to perform a reduced range of light work with additional limitations. The RFC portion of the ALJ's determination is approximately 7 pages of the 13-page opinion and thoroughly discusses Plaintiff's own description of her impairments, the underlying medical record, and the persuasiveness of the medical opinions.

The ALJ first acknowledged Plaintiff's Function Report. Tr. 16-17, 218-33. Plaintiff stated she had an inability to handle stress; suffered from fatigue and insomnia; and had difficulties seeing, typing, processing information, lifting, squatting, bending, standing, reaching, walking, kneeling, talking, stair climbing, completing tasks, concentrating, understanding, and remembering. Any issues she had with maintaining her self-care were related to a difficulty of reaching across her body with her right arm. Plaintiff indicated she could, however, care for her dog with the help of her partner, prepare meals, do small loads of laundry and dishes, regularly attend City Council meetings, go to the gym and doctor appointments, drive alone although she preferred not to, shop, manage her finances, play the piano, do puzzles, paint by numbers, walk on a flat surface for an hour, follow written instructions, and adjust to routine changes.

Although Plaintiff reported issues with walking in her Function Report, she testified at her hearing that she could walk six to ten miles per day, or walk two miles, take a break, and walk another three miles. Tr. 17, 74-75. She testified to being able to walk such long distances despite her dizziness, and perform basic chores. *See* Tr. 70, 78. Plaintiff stated she drove "regularly – probably daily." Tr. 65. She discussed having a service dog, but confirmed it was not prescribed to her by a medical doctor. Tr. 73. She reported having a 30-pound lifting restriction, explained that numbness in her fingers caused her to drop objects, indicated she could sit for 30 to 60 minutes before needing to get up, and experienced lethargy from her medications. Tr. 75-77. She stated she had the ability to interact with people, such as neighbors and fellow City Council members, but had difficulties with crowds and children. Tr. 81.

After acknowledging Plaintiff's description of her impairments, the ALJ reviewed the medical record. On April 24, 2021, the alleged date of onset, Plaintiff appeared to Southeast Hospital's Emergency Department with complaints of chest discomfort. Tr. 17-18, 452-541, 630-

35. She was discharged on May 4, 2021, with the following diagnosis: (1) anginal pain; (2) elevated troponin; (3) STEMI (ST elevation myocardial infarction); (4) spontaneous dissection of coronary artery; (5) abnormal EKG; and (6) tobacco use. Tr. 18, 474, 480. She was recommended to quit smoking and start outpatient cardiac rehab. Tr. 496.

On June 10, 2021, Plaintiff appeared for a follow up cardiac appointment at Southeast Hospital. Tr. 18, 609-12. She reported that "for the most part" she did not have any exertional chest discomfort and was going to cardiac rehab. Tr. 18, 609. She indicated she felt "really good" when exercising. *Id*. She noted "a few episodes of brief left-sided chest discomfort" with a "butterfly sensation." *Id.* Her treating physician, Dr. Kenneth Retter, indicated his belief that her condition was improving. Tr. 610.

On July 19, 2021, Plaintiff visited SSM Heart Institute to establish care with a cardiologist. Tr. 18, 837-840. She reported "occasional chest cramping" with "no recurrence of chest symptoms that took her to the emergency room." Tr. 837. She denied edema, orthopnea, paroxysmal nocturnal dyspnea (shortness of breath while sleeping), syncope, presyncope, or palpitations. *Id.* Plaintiff did report feeling in a fog and appeared tearful. *Id.* Dr. Stephanie White confirmed she was on the appropriate medication for her conditions, but approved the discontinuance of Metoprolol as it could cause dizziness. Tr. 840. Dr. White encouraged her to continue cardiac rehab and seek counseling for anxiety related to her diagnoses. *Id.*

On August 19, 2021, Plaintiff underwent a CT of her chest and abdomen, which revealed no evidence of fibromuscular dysplasia. Tr. 18, 965-66. Dr. Retter informed her that she would not need another follow up appointment for 5 to 6 months unless problems arose. Tr. 951-52. Based on the review of these records, the ALJ found that she was "stable from a cardiac standpoint." Tr. 18.

The ALJ then turned to Plaintiff's degenerative disc disease diagnosis. Tr. 18. On January 26, 2021, a few months prior to Plaintiff's alleged date of onset, an MRI examination of her cervical spine revealed "unremarkable" results except for "mild multilevel facet hypertrophy." Tr. 18, 312. She was recommended conservative treatment, including massage therapy, physical therapy, and pain management. Tr. 18, 316. Plaintiff continued seeing a chiropractor with whom she had established care in May of 2020. Tr. 18, 812-33. On January 13, 2022, she obtained an updated MRI, which revealed "mild left facet arthropathy, mild left neuroforaminal stenosis, mild spinal canal stenosis at C6-7, and mild bilateral facet arthropathy at C7-T1." Tr. 18, 1091. On October 4, 2021, Plaintiff reported "difficulty bringing her legs up when she is walking" and "going up stairs," Tr. 1044, and on January 20, 2022, she reported leg weakness, Tr. 1092. The ALJ noted, however, that on January 14, 2022, she told her counselor she was "walking dogs for money and exercise," and on August 2, 2022, she reported the ability to walk six to ten miles per day, Tr. 18, 74-75. Despite Plaintiff's complaints of decreased range of motion and tenderness, her physical examinations tended to exhibit normal results, full strength, and full range of motion. Tr. 19 (citing 340, 852, 889, 1115, 1144).

As to Plaintiff's right shoulder, the ALJ noted that on April 9, 2021, approximately two weeks before her alleged onset date, an examination of her upper extremities revealed 5/5 strength in all major muscle groups, symmetrical reflexes, and normal sensation to light touch and pinprick modalities. Tr. 342. An MRI of the right shoulder revealed "[m]inimal rotator cuff tendinosis without a partial or full-thickness rotator cuff tear." Tr. 337. She participated in physical therapy with good functional improvements, including improvement with range of motion and numbness. Tr. 19, 357, 362, 364, 369, 378, 380, 383, 392. On October 4, 2021, Plaintiff appeared for a "new complaint of right shoulder pain." Tr. 1044. Upon examination, the

physician indicated she was not a surgical candidate and was referred to neurology. Tr. 1046. On

October 19, 2021, her primary care physician noted she had normal range of motion with

negative apprehension and impingement testing. Tr. 1050. On January 20, 2022, Plaintiff's

neurologist noted limited and painful range of motion in her right shoulder. Based on these

records, the ALJ determined Plaintiff has the limitation of frequent overhead reaching with the

right upper extremity.

The ALJ then summarized Plaintiff's mental health records, including the administrative

medical findings of Drs. Cottone and Stalker, as well as Plaintiff's activities of daily living. Tr.

19-21. As discussed above in the first assignment of error, the ALJ found Plaintiff to have no

limitation in understanding, remembering, or applying information; marked limitation in

interacting with others; moderate limitation with regard to concentrating, persisting, or

maintaining pace; and mild limitation in adapting or managing herself. *See* ECF No. 15. The ALJ

found it especially notable that her mental conditions were mostly controlled with medication,

she was able to travel, served as a representative on city council, worked on ballot initiatives in

her role as an elected official, and could care for and train dogs. Tr. 20-21.

Based on a careful review of the record, the Court finds the ALJ's RFC determination

was supported by substantial evidence, including medical evidence, addressing Plaintiff's ability

to function in the workplace. The ALJ properly did not determine that she would be off task a

minimum of 20% of the workday or absent three or more times per month. Plaintiff's argument

does not point to any medical findings in the treatment notes that demonstrate her impairments

caused more limitations than those found by the ALJ. "The ultimate burden of persuasion to

prove disability . . . remains with the claimant." *Young v. Apfel*, 221 F.3d 1065, 1069 n.5 (8th

Cir. 2000). Although Plaintiff may generally interpret the underlying medical record to support

greater mental or physical limitations, it is not this Court's responsibility to reweigh the evidence. "If substantial evidence supports the decision, then we may not reverse, even if inconsistent conclusions may be drawn from the evidence, and even if we may have reached a different outcome." *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010).

For the foregoing reasons, the Court finds that the ALJ's determination is supported by substantial evidence on the record as a whole and contains no legal errors.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff Shannon Marie Truxel's Complaint is **DISMISSED, with prejudice**. A separate judgment will accompany this Memorandum and Order.

So Ordered this 28th day of May, 2024.

STEPHEN R. WELBY
UNITED STATES MAGISTRATE JUDGE